IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 95-60361

—————————————

WILLIAM A. RAMSEY, JR.,

Plaintiff -Appellant,

and

DIANNE W. RAMSEY

Plaintiff,

versus

THE COLONIAL LIFE INSURANCE COMPANY OF AMERICA, doing
business as Chubb LifeAmerica,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
For the Southern District of Mississippi
(3:90-CV-452-BN)

—————————————

May 3, 1996

Before POLITZ, Chief Judge, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:

Plaintiff-Appellant William A. Ramsey (Ramsey) appeals from the district court's denial of his postjudgment, post-appeal "Motion to Quantify Prior Judgment and for Declaratory Relief." Finding no error, we affirm.

———————————

Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

I.

FACTS AND PROCEEDINGS

Early in 1987, Ramsey fell from a ladder while working in his yard and fractured his spine. As a result, he suffered permanent and irreversible quadriplegia. None dispute that Ramsey will require medical treatment and care for the remainder of his life.

At the time of Ramsey's fall, his wife, Dianne Ramsey, was covered by a group insurance policy (the group policy) sponsored by her employer, Moulden Supply Co., Inc (Moulden), and issued by Defendant-Appellee Colonial Life Insurance Company of America (Colonial Life). Ramsey was covered as the spouse of a covered employee.

For more than two years following Ramsey's accident, Colonial Life paid his medical bills. Then, in August 1989, Colonial Life drastically increased Moulden's premiums, so Moulden dropped the group policy. The Ramseys accordingly secured from Colonial Life a conversion policy with a strict $20,000 maximum lifetime limit on benefits, significantly lower than the $2,000,000 limit that the group policy provides. In July 1990, Colonial Life began refusing to pay any further medical expenses incurred by Ramsey.

In August 1990, the Ramseys filed suit against Colonial Life in Mississippi state court, alleging state law claims of bad faith refusal to pay benefits and gross negligence with intent to deceive in inducing him to convert to a policy with substantially lower coverage limits. Colonial Life removed the action to federal district court, where the pleadings were recharacterized as a claim for benefits under the provisions of the Employee Retirement Income Security Act (ERISA).[1] Under the reconstituted pleadings, the court dismissed Dianne Ramsey, as well as the state law causes of

---

[1] See 29 U.S.C.S. §§ 1001 et seq. (Law. Co-op 1990 & Supp. 1995).

2

action, from the suit.

In a final, summary judgment issued in June 1992, the district court held that (1) Ramsey was entitled to continued medical coverage under the group policy until either his disability came to an end or he obtained other insurance; (2) any premiums paid under the conversion policy were unnecessary and should be refunded; and (3) Ramsey was not entitled to recover attorney's fees.[2] The district court also rejected an argument made by Ramsey that the group policy covers expenses for medical services that have not actually been provided. In so doing, the district court expressly found that "the policy, by its very terms, provides that a specific medical care or service must be 'rendered' before a benefit may be received under the policy."[3]

After the district court's opinion and judgment were filed, Ramsey appealed to this court (Ramsey I).[4] All that was appealed, however, was the district court's denial of attorney's fees. Colonial Life cross-appealed from the ruling extending coverage under the group policy. In January 1994, we issued our Ramsey I

---

See Ramsey v. Colonial Life Ins. Co. of Am., 843 F. Supp. 1103 (S.D. Miss. 1992) [hereinafter Ramsey], aff'd 12 F.3d 472 (5th Cir. 1994).

Ramsey, 843 F. Supp. at 1109. The district court reasoned: The medical benefits section of the Colonial Life policy provides that, "to receive a benefit, you must have covered medical expenses . . . ." Covered medical expenses are defined as "the usual and customary charges for services and supplies . . . ." Usual and customary charges are defined as "those normally charged by the provider for the specific medical care or service rendered." Accordingly, the policy, by its very terms, provides that a specific medical care or service must be "rendered" before a benefit may be received under the policy.
Id.

See Ramsey v. Colonial Life Ins. Co. of Am., 12 F.3d 472 (5th Cir. 1994) [hereinafter Ramsey I].

3

opinion affirming the district court's judgment with regard to both the extension of coverage and the denial of attorney's fees.[5]  In that appeal Ramsey failed to raise, and we accordingly did not address, the issue whether the group policy covers expenses for medical services that have not actually been provided.

In September 1994, nine months after we issued our Ramsey I opinion, Ramsey filed a motion in the district court, asking that court to "quantify and declare the precise amount that defendant is indebted to the plaintiff" pursuant to that court's prior judgment. In his motion, Ramsey once again argued that Colonial Life should pay for medical expenses that he has not actually incurred——an argument that the district court had expressly rejected and that Ramsey did not challenge before us in Ramsey I.  More specifically, Ramsey's motion posits that Colonial Life owes him the amount that he would have spent on medical services, were it not for Colonial Life's wrongful denial of his claims for benefits under the group policy.  Ramsey concedes that his family gratuitously provided the services in question.

The district court exercised jurisdiction over Ramsey's motion pursuant to 22 U.S.C. § 2202, which provides for a grant of "[f]urther necessary or proper relief based on a declaratory judgment or decree."[6]  The court subsequently denied the motion, noting that the basic issue presented had been expressly considered and rejected in its prior judgment.  Ramsey timely appealed to this court.

II.

ANALYSIS

_____

See id.

Section 2202 reads:  "Further necessary or proper relief based on a declaratory judgment or decree may be granted . . . against any adverse party whose rights have been determined by such judgment."  See 28 U.S.C.A. § 2202 (West 1994).

4

A.    STANDARD OF REVIEW

The district court properly considered Ramsey's "motion to quantify judgment" as a motion for further relief under 28 U.S.C. § 2202, which "merely carries out the principle that every court, with few exceptions, has inherent power to enforce its decrees."[7] The court then denied the motion purely on legal grounds. Accordingly, we review its ruling de novo.[8]

B.    THE MERITS[9]

We hold that the district court properly denied Ramsey's motion. Ramsey had his "day in court" on this issue four years ago, before the district court issued its opinion and judgment. By failing to challenge the district court's ruling on this question at the time of the initial appeal to this court, Ramsey abandoned the issue.[10] He cannot now, nine months after the issuance of our

_____

Horn & Hardart Co. v. Nat'l Rail Passenger Corp., 843 F.2d 546, 548 (D.C. Cir.), cert. denied, 488 U.S. 849 (1988).

See Pro-Eco, Inc. v. Bd. of Cmm'r of Jay County, Indiana, 57 F.3d 505 (7th Cir. 1995) (reviewing de novo denial on legal grounds of motion for further relief under 28 U.S.C. § 2202); see also FDIC v. Mmahat, 960 F.2d 1325 (5th Cir. 1992); cf. Teas v. Twentieth Century-Fox Film Corp., 413 F.2d 1263 (5th Cir. 1969).

Colonial Life argues that res judicata precludes consideration of the issue presented by Ramsey's appeal. Res judicata is appropriate only if four conditions are satisfied:
    First, the parties in a later action must be identical to . . . the parties in a prior action. Second, the judgment in the prior action must have been rendered by a court of competent jurisdiction. Third, the prior action must have concluded with a final judgment on the merits. Fourth, the same claim or cause of action must be involved in both suits.
U.S. v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994) (emphasis added); see also Eubanks v. FDIC, 977 F.2d 166 (5th Cir. 1992). As the claim at issue here arose in the context of same action in which it was earlier decided, we decline Colonial Life's invitation to apply the doctrine of res judicata to the instant case.

For examples of cases holding that when a party fails to advance an argument on appeal, the argument is deemed abandoned,

opinion in Ramsey I, dust off the argument and recast it as a motion for further relief in the district court.[11] To allow him to do so would fly in the face of several of our foundational principles——namely, that "there must be an end finally to a particular litigation"[12]; that parties should not be encouraged to engage in "trial by ambush,"[13] particularly after the district court's final judgment has been affirmed by this court; and that postjudgment motions are not to be used as substitutes for appeals.[14]

Nevertheless, Ramsey presses his argument by insisting that equity requires Colonial Life to compensate him for monies that he would have spent on medical services had the group policy not been improperly canceled. He cannot be heard to do so now. We have

---

see Justiss Oil Co., Inc. v. Kerr-McGee Refining Corp., 75 F.3d 1057 (5th Cir. 1996); Eason v. Thaler, 73 F.3d 1322, 1329 (5th Cir. 1996); Feldt v. Mentor Corp., 61 F.3d 431, 437 n.7 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir.), cert. denied, 115 S. Ct. 189 (1994)..

See, e.g., Savers Fed. Sav. & Loan v. Reetz, 888 F.2d 1497, 1501 (5th Cir. 1989) (noting that issues raised in pleadings, but abandoned in opposition to motion for summary judgment, could not be saved by being raised again in motion to reconsider) (citing Batterton v. Texas Gen. Land Office, 783 F.2d 1220, 1224-25 (5th Cir.), cert. denied, 479 U.S. 914 (1986)).

See Briddle, 63 F.3d at 380 (internal quotations omitted).

See Savers, 888 F.2d at 1501.

Cf. Eason, 73 F.3d at 1329 (holding that district court "exceeded the scope" of a remand when it addressed an issue that had been abandoned on appeal); Lancaster v. Presley, 35 F.3d 229, 232 (5th Cir. 1994) (holding that district court properly exercised discretion in denying Rule 60(b) motion that effectively "ask[ed] the district court . . . to overturn this Court's dismissal of [the movant's] appeal"), cert. denied, 115 S. Ct. 1380 (1995); Edward H. Bohlin Co. Inc. v. Banning Co., 6 F.3d 350, 353 (5th Cir. 1993) (emphasizing that Rule 60(b) motions are "not to be used as a substitute for appeal") (quoting Seven Elves v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981)).

indicated repeatedly that abandoned, waived, or forfeited issues may be reconsidered only when failure to do so would result in a miscarriage of justice.[15] Even though we are sympathetic to Ramsey's circumstances, we are satisfied that the instant appeal presents no such case. First, the district court's reading of the terms of the group policy is not unreasonable.[16] Second, that court specifically found that when Colonial Life denied Ramsey's coverage, it relied on genuine legal issues and did not act in bad faith.[17] We approved those findings in Ramsey I.[18] Accordingly, we can discern no need for a full reconsideration of the argument which Ramsey attempts to resurrect at this late stage in the case; and we hold therefore that the district court properly denied Ramsey's motion for further relief.[19]

AFFIRMED.

---

See, e.g., Batiansila v. Advanced Cardiovascular Sys., Inc., 952 F.2d 893, 896 (5th Cir. 1992).

See supra note 3.

See Ramsey, 843 F. Supp. at 1112.

See Ramsey I, 12 F.3d at 480 (holding that district court's findings "are not so erroneous as to represent an abuse of discretion").

Ramsey raises one additional argument in his reply brief, in which he challenges for the first time the district court's determination that he has not properly documented an amount allegedly owed by Colonial Life to the Mississippi Department of Rehabilitation Services for its provision of medical services to him. We have repeatedly held that we will not consider issues raised for the first time in a reply brief. See, e.g., Glover v. Hargett, 56 F.3d 682, 685 n.4 (5th Cir. 1995), cert. denied, 116 S. Ct. 726 (1996); United States v. Jackson, 50 F.3d 1335, 1340 n.7 (5th Cir. 1995); Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 260 n.9 (5th Cir. 1995).